IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 10, 2006

## STATE OF TENNESSEE v. ALLAN JOSEPH ROBLES

**Direct Appeal from the Circuit Court for Henry County**
**No. 13673     Julian P. Guinn, Judge**

-----

**No. W2005-00516-CCA-R3-CD  - Filed April 10, 2006**

-----

The defendant, Allan Joseph Robles, was convicted by a Henry County jury of aggravated sexual battery, a Class B felony, and was sentenced as a 100% violent offender to twelve years in the Department of Correction and fined $10,000.  On appeal, he argues: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in not granting his motion for acquittal; and (3) the trial court erred in not charging a lesser-included offense.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Guy T. Wilkinson, District Public Defender, and W. Jeffery Fagan, Assistant Public Defender, for the appellant, Allan Joseph Robles.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; G. Robert Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant's conviction is a result of his conduct toward the eleven-year-old daughter of his girlfriend that took place at the victim's house on February 7, 2004.  The victim, A.B.,[1] testified

-----

[1]A.B. was born on July 28, 1992, and was twelve years old at the time of trial.  It is the policy of this court to refer to juvenile victims of sexual offenses by their initials.

that she was home alone when the defendant returned from taking her mother to work.[2] A.B. was sitting on the couch watching television when the defendant "came and sat real close to [her] and started touching [her]." The victim, who was wearing a t-shirt and jeans, said the defendant touched her "[i]n between [her] legs" in her "groin area." A.B. then moved to the other end of the couch, but the defendant "scooted down there, and he did it again, started touching [her] again." The victim then picked up some car keys and drove herself to a church where she "sat there" for "[j]ust, like, five minutes maybe" and then returned home. Once back inside her house, the victim said the following happened:

> I got back home, and then I went in the bath – , no I went in my bedroom and locked my door, and then [the defendant] got in, and I went in my bathroom, and I locked the door, and he went to the kitchen and got a butter knife and unlocked the door and grabbed me by my hips, and then I finally got away, and I went back into the living room.

The victim said she "sat back down on the couch" and the defendant "came and sat beside [her] again and started touching [her] again" in the same area as before. Asked if the defendant said anything to her, the victim said he asked her to give him a kiss, but she said, "No." The victim said this whole episode finally ended when she and the defendant left to pick her mother up from work. The defendant warned the victim not to tell her mother what happened because he thought her mother would "whip [his] butt." The victim, however, did confide in her mother, who then confronted the defendant. The victim overheard the defendant admit to her mother that "[he] was touching [the victim] and stuff." The victim denied that she wrestled with the defendant over the car keys, that she placed the keys between her legs to prevent him from getting them, or that she ever told him she wanted to have sex with him.

On cross-examination, the victim acknowledged the defendant had once told her she could not use the dishwasher but denied that made her mad at him. She also denied ever telling him that she wished he did not live with her family because she did not want to obey him. Asked about driving a car, the victim said her mother let her drive once but denied that the defendant had ever let her drive.

The victim's mother, L.B., testified that on the day in question, she noticed A.B. was "acting odd" and asked the defendant to go to the store so that she "could find out what was going on" because "you could just tell there was tension between [A.B. and the defendant], and [L.B.] knew something had happened." After the defendant returned from the store, L.B. confronted him:

> Okay. I said, "What happened?" And [the defendant] said that [A.B.] made a pass at him, and he told her that they couldn't do that, and I said, "You couldn't do what," and he said, "I couldn't have sex with [A.B.]," and I said, "[A.B.] was coming onto you," and he said, "Yes."

---

[2]A.B. explained that the defendant had been living with her family for "about two or three weeks."

After that, I don't remember what was said. We ended up back in the living room, and I told him I wanted him to tell me the truth, that he was talking about my daughter, and she was eleven. I said, "I don't want you lying about what happened," and he said -- I said, "Which one of you made the pass," and he said, "Well, I guess I did."

And I said, "Well, what did you do," and he said that he was trying to kiss her and hug her, but he -- he said he was trying to let her know how much he loved her, that they had gotten into an argument over those car keys, and he was trying to let her know that he loved her, and he said that -- and he had put his hand between her legs, and after that, he -- he was trying to tell me that they was [sic] wrestling over the car keys, and then later I asked him -- it was just a few minutes later. I asked him if [s]he took off [i]n the car before or after he had touched her, and he said, "Well, it was after," and I said, "Well, then, you wasn't [sic] arguing over the keys." You wasn't [sic] wrestling over the keys, and he said, "No," and he said that -- he started crying, and he said that he has -- can't think how he said it now. Urges. He said he had urges that he couldn't control and that he did touch her, and that was pretty much it. After that, he was just saying that he needed help and that he didn't want to get into trouble, he just wanted to get counseling and get help because he knew he had a problem.

The defendant explained to L.B. that he was molested as a child and that A.B. "caused him to think about that" because he felt A.B. "was just out of control, that she was wanting to drive the car." L.B. said that the defendant "just kept telling [her] that he wanted to go get help. . . . He kept telling [her] not to tell on him and said it would never happen again and that he was going to go get help."

After the defendant was arrested, he wrote several letters to L.B. from jail. Two of these letters were introduced into evidence and read to the jury by L.B. In the first letter, dated February 17, 2004, the defendant wrote:

I got your letter today. I really don't know what to say or have anything to tell you that you might find interesting.

I only wonder who is the person called and filed a complaint. I feel like I'm still in shock. I still can't believe this happened. I thought that we were going to work things out and get me the help I need. If it[']s only possible that whoever called can call again and tell these people that it was all a big mistake from a bad dream. I'm facing a long term of jail time if this thing don't get fixed as it never happened. I am still going to pursue all the help I need even if I'm not in jail.

And as for our relationship, I need to get well in order for us to continue. It is what I want because I love you so much. However, now that there are obstacles in the way that has [sic] to be fixed first.

By the way, I did love you before, and I still love you now.  If I didn't love you, I would not have made the sacrifices I made to be with you. You were all that I need and all that I want.  We were perfect together.

Though I am not perfect.  I am probable to make mistakes for I'm only human.  We all are . . !

I was also the happiest person in this world, until [A.B.] stressed me out to the brink of my insanity which gave me the flashback from my childhood memory.  I couldn't control my emotion.  I couldn't figure out what was I thinking, and besides I can't be mean to [A.B.].  I want her to be happy.  But she would never listen and respect me.  [S]he got me very depressed!

I ask myself the same question you ask me . . . "If you ever really loved me?"  If you really loved me, you will find it in your heart to really forgive and things could get back to the way it was.  And I will be getting the treatment I need.

I miss you so and I love you so.  [The defendant]

P.S.  Please let me know what you really want for us?  What can you do to help me?

In the second letter, dated March 3, 2004, the defendant wrote, in pertinent part:

[L.B.], I don't deserved [sic] to be in [jail].  I may have disrespected your daughter but she put me through a nightmare.  I'm sorry - I feel that what's goin [sic] on is too farfetch.  I did not hurt no one.  I am the one who got hurt.  I really don't know what's going to happen to me, but I shouldn't have to go thru [sic] this.  Because I did not have skin contact with [A.B.].  I don't want to keep reminding you but, I want you to understand that it aint [sic] as awful as you assumed it is.  I was scared to death for her ending up in a wreck.  I was frustrated, anxious, and stressed out and I've lost my focus.  I was not strong enough to discipline.  I'm sorry that I couldn't think of anything else to do at that moment.  I wish I could have called you.  I thought I didn't need to bother you while you were at work.  Anyway, I'm trying to explain things but I really don't know how.  I feel like I'm just going in circles.  I hope we can talk more and try to work things out.  I'm sorry, I'm just hurting right now. . . .  But, I don't deserve this.  I need you to help me!

I want you to help me get out of this if you really say you love me and still do.  I want you to talk to the D.A. and you can tell them you wanted me to get the necessary help I need and they will do something.  Or you can tell them that this was a big mistake and it just went out of proportion and it's a big misunderstanding and it is farfetch.  They will do something. . . .

Anyway, I only wish that I can explain clearly. And I wish that you could have taken your time and have the consideration to decide what's really a necessary action to take, before all these [sic] happened. I wish you could have taken precaution instead of losing control and being upset at that moment. I try to stop you but I couldn't, you were too upset to consider anything at that moment.

On cross-examination, L.B. testified that she allowed A.B. to drive "on the back roads" but could not remember the defendant ever letting A.B. drive. L.B. denied that the defendant ever told her that he would go to counseling to prove that he did not touch A.B. L.B. acknowledged that she did not report the defendant to the police.

Detective William Gary Vandiver, of the Henry County Sheriff's Department, testified that on February 10, 2004, he interviewed the defendant after receiving information from the Department of Children's Services. The defendant gave the following signed, written statement to Vandiver:[3]

I, Alan Joseph Robles, live at . . . with [L.B] and her children [A.B. and D.B.]. On this past Saturday 2-7-04 I was alone at home with [A.B.]. [A.B] took the car without my consent and drove around. When she came home she wanted to drive more. I went with her to keep her from getting hurt. I convinced her to go home and get in house and eat were she would stop. We went in house and eat. When then [sic] sat on couch. She wanted to drive more. I explained to her why she did not need to be driving. During this time I told her I loved her and that I did not want her to get hurt. I put my arms around her and kissed her on face. She then began looking for the car key. She talked me into giving her the car key, promising me she would not drive. I gave her the key and she left in car, when she came back I got in car with her. When back home we sat on couch. She laid on her stomach on couch. I was sitting beside her. I then I had [sic] a urge. For some reason I got to thinking that she was older. I began by touching her on back of leg. I then put my hand between her legs, over her pants but on her private. I then realized what I was doing and said no I can't do this and moved away from her. I feel like I need help because I had the urge to touch a little or young girl. This was the first time I have had this urge. I want help before I get worse. I do not want this to occur again.

On cross-examination, Vandiver acknowledged that when he interviewed A.B. on February 11, 2004, she told him that the defendant had let her drive the day he touched her. He also said A.B. told him that the defendant "did not kiss [her] on the face that day or hug [her]." A.B. also failed to tell the detective about "the scenario of going into the bathroom and with the butter knife."

The defendant elected not to testify and presented no evidence.

---

[3]Vandiver said he wrote the statement out and had the defendant read and initial each line of the statement. The statement was introduced into evidence and read to the jury by the detective.

## ANALYSIS

## I. Sufficiency of the Evidence

As his first issue, the defendant argues that the evidence is insufficient to support his conviction for aggravated sexual battery, contending "that the inconsistencies in the State's case are such that there was not a showing of sufficient evidence to convict." The State argues the evidence was sufficient to find the defendant guilty of aggravated sexual battery. We agree with the State.

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To prove aggravated sexual battery, the State was required to show beyond a reasonable doubt that the defendant had "unlawful sexual contact with a victim . . . [who] is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (2003). "Sexual contact" is defined as:

> [T]he intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area

of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

Id. § 39-13-501(6). It is undisputed that the victim in this case was only eleven years old. The victim testified the defendant touched her clothing that covered the immediate area of her intimate parts, her groin area. The defendant does not dispute touching the victim in her groin area, he instead contends "that the touching that took place between he and the victim in this case was not for sexual arousal or gratification but was done in order to obtain car keys from the victim who was not old enough to drive so that she could not hurt herself in the vehicle." However, in his signed statement to the police, the defendant acknowledged that he "got to thinking that [the victim] was older" when he "put [his] hand between her legs, over her pants but on her private." The defendant then acknowledged that he needed "help because [he] had the urge to touch a little or young girl." In addition, although he initially told the victim's mother that he touched the victim while attempting to get the car keys from her, he later acknowledged that this was not true and that he touched the victim because "he had urges that he couldn't control." These acknowledgments by the defendant, that he had "urges" to touch the eleven-year-old victim through her clothes over her private parts and that he needed "help before [he] get[s] worse," are more than enough for a reasonable jury to conclude that the defendant touched the victim for his own sexual gratification.

In addition, the defendant further argues "that the statements that the victim gave to Investigator Vandiver a few days after the incident supposedly took place and her testimony at trial are at odds with another." In his brief, the defendant points to what he believes are inconsistencies between what the victim testified to and what she told the police shortly after the defendant touched her. Any "[q]uestions concerning the credibility of witnesses, the weight and value of the evidence, as well as all factual disputes raised by the evidence, are for the trier of fact; appellate courts do not reweigh the evidence or reevaluate credibility determinations." State v. Flake, 88 S.W.3d 540, 554 (Tenn. 2002) (citing State v. Holder, 15 S.W.3d 905, 912 (Tenn. Crim. App. 1999)). Here, the defendant's conviction shows that the jury resolved any inconsistencies in the victim's story in favor of what she testified to in court. This issue is without merit.

## II. Motion for Acquittal

As his second issue, the defendant contends that the trial court erred in not granting his motion for acquittal, arguing that the evidence is insufficient to support his conviction. When a motion for acquittal is presented to the trial court, the court is only concerned with the legal sufficiency of the evidence, rather than the weight of the evidence presented. State v. Blanton, 926 S.W.2d 953, 957 (Tenn. Crim. App. 1996). In determining sufficiency, the trial court must consider the parties' evidence, disregard the defendant's evidence which conflicts with that of the State, and afford the State the strongest legitimate view of the evidence, including all reasonable inferences. Id. at 957-58. As we have already determined, the State's proof was sufficient to establish all elements of the offense of aggravated sexual battery, and the trial court was correct in denying the defendant's motion for acquittal. This issue is without merit.

### III. Lesser-Included Offense

Finally, the defendant contends that the trial court erred in not charging the lesser-included offense of attempted aggravated sexual battery. The State argues the trial court properly denied the defendant's request for an instruction of attempted aggravated sexual battery because the evidence does not support a claim that the defendant "failed in his attempts to touch" the victim. We agree with the State.

In State v. Burns, 6 S.W.3d 453 (Tenn. 1999), our supreme court explained that:

An offense is a lesser-included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id. at 466-67. Once a trial court concludes that an offense is a lesser-included offense, then the court must apply the following two-step analysis to determine if a lesser-included offense instruction is warranted:

First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence,

viewed in this light, is legally sufficient to support a conviction for the lesser-included offense. This two-step analysis is practical, can be easily applied by the trial courts, and remains broad enough to preserve both the State's and defendant's rights to consider any lesser-included offenses fairly raised by the proof.

Id. at 469. Generally, "evidence sufficient to warrant an instruction on the greater offense also will support an instruction on a lesser offense under part (a) of the Burns test." State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002).

Under part (c) of the Burns test, attempted aggravated sexual battery is a lesser-included offense of aggravated sexual battery. However, "part (c) of the Burns test, . . ., applies 'to situations in which a defendant attempts to commit . . . either the crime charged or a lesser-included offense, *but no proof exists of the completion of the crime*.'" State v. Marcum, 109 S.W.3d 300, 303 (Tenn. 2001) (quoting Ely, 48 S.W.3d at 719) (emphasis added). In Marcum, the defendant, who was convicted of rape, appealed the denial of his request for an attempted rape instruction. In affirming the trial court's denial, the court reasoned that:

The testimony in this case was susceptible of only two interpretations-that the rape occurred or that it did not. The victim's testimony that the defendant forced her to place her mouth "on" his "private part" is evidence that she engaged in fellatio and, therefore, supports a rape instruction. The defendant testified that this event never happened and, further, that he was never left alone with the victim at all. There was no evidence of attempt, and the jury found [the victim] a more credible witness. Thus, no instruction on attempt was warranted.

Id. at 304.

In the present matter, the jury was instructed as to two charges: aggravated sexual battery and assault. Aggravated sexual battery is defined as "unlawful sexual contact with a victim . . . [who] is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (2003). "Sexual contact" is defined as:

[T]he intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

Id. § 39-13-501(6).

A person is guilty of assault if the person:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101(a) (2003).

Attempted aggravated sexual battery, which the defendant argues should have been included in the jury instructions, occurs when a person, "acting with the kind of culpability otherwise required for" aggravated sexual battery, does any of the following:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a) (2003).

In denying the defendant's request for a lesser-included offense instruction for attempted aggravated sexual battery, the trial court explained:

Well, to my way of thinking, . . ., there must be evidence to support an attempt and mitigating [sic] against the commission of the offense itself, and there's not a scintilla of evidence here of the attempt. [The defendant] either did or he didn't, and the lesser-included then becomes the assault. . . . I see nothing to support an attempt at all.

The defendant acknowledges in his brief that the proof at trial showed he touched the victim in her groin area but argues "that the touching in question was [not] for sexual arousal or gratification . . . [and] that the question of intent is a fact question that should have gone to the jury."

Given the fact that the defendant admittedly touched the victim in the groin area, we do not understand exactly what he believes the jury could have believed that he only "attempted" to commit aggravated sexual battery which, in this case, would have occurred when he touched the victim's

clothing over her intimate parts, if the touching was for the purpose of sexual arousal or gratification. Thus, it appears the "attempt" aspect of his argument is not whether he touched the victim, which he admitted, but, rather, whether he became sexually aroused or gratified from the touch. However, this view ignores the fact that Tennessee Code Annotated section 39-13-501(6) requires that the touch be "for the purpose of sexual arousal or gratification," not that the defendant actually was successful in this goal. Thus, we conclude that this argument is without merit.

Further, if the defendant's touching of the victim truly lacked sexual arousal or gratification, then he would be guilty of assault, as to which the jury was instructed, not attempted aggravated sexual battery. Accordingly, the facts of this case simply do not support an attempt instruction, and we conclude the trial court did not err by declining to charge the jury on the lesser-included offense of attempted aggravated sexual battery.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

ALAN E. GLENN, JUDGE